**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 03 CR 80 |
| ) | |
| GREGORY McNEAL ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On March 27, 2003, a grand jury indicted Gregory McNeal for conspiracy to possess cocaine base and cocaine with intent to distribute in violation of 21 U.S.C. § 846; possession of cocaine base and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm after conviction of a felony in violation of 18 U.S.C. § 922(g)(1). About six months before McNeal's trial, on November 12, 2004, the government filed an information pursuant to 21 U.S.C. § 851 alleging that if McNeal was convicted, it intended to seek enhanced penalties on the Title 21 charges based on the fact that on August 19, 1998, McNeal was convicted in Illinois state court of the felony offense of manufacture / delivery of cocaine.

A jury convicted McNeal on all charges on May 18, 2005. Pursuant to the § 851 information, the government contends that McNeal is subject to enhanced penalties due to the 1998 conviction. *See* 21 U.S.C. § 841(b). McNeal objects to the use of the 1998 conviction to enhance his sentence, contending that he received ineffective assistance of counsel in that case. The government argues that the law does not permit McNeal to attack the 1998 conviction

collaterally. For the reasons stated below, the Court agrees with the government.

## Facts

McNeal's lawyer in the 1998 case was Anthony Basile. In 1999, the Illinois Attorney Registration and Disciplinary Commission filed a complaint against Basile, alleging that he had engaged in conduct prejudicial to the administration of justice and reflecting adversely on his honesty, trustworthiness, and fitness. Specifically, the ARDC alleged that Basile had repeatedly failed to appear in court on a series of Illinois criminal cases between 1996 and 1999 and had, on several occasions, been found in contempt as a result. One of the contempt charges was initiated in 1996 by Judge Joseph Kazmierski, the judge who conducted the 1998 bench trial of McNeal (represented by Basile) that resulted in the conviction at issue in the present case.

At an evidentiary hearing held before an ARDC hearing panel in 2000, Basile testified that he had been diagnosed with HIV in 1996 and with AIDS in 1999, that he had experienced numerous physical ailments, and that as a result of his disease and related ailments he had difficulty remembering and retaining information. A psychiatrist who evaluated Basile concluded that his cognitive disabilities stemmed from depressive disorders, use of cocaine, and AIDS-related dementia, and that this prevented Basile from practicing law competently. The hearing panel recommended that Basile be suspended from practicing law, a recommendation that the Illinois Supreme Court adopted in September 2000.

McNeal's current counsel has also uncovered information that in January 2000, following contempt findings, Basile was placed on probation by two separate Cook County Criminal Court judges, with a condition that he participate in an "intensive drug program." McNeal's counsel has also obtained records reflecting that Basile was charged criminally with narcotics-related

offenses in 1987 (several separate charges), 1989 (two charges), 1994, 1995, 1997, 1999 (five charges), 2001, 2003, and 2005.

McNeal contends that when Basile represented him in the 1998 case, he was impaired, under investigation by the ARDC, and incapable of competent representation of clients. In addition, McNeal contends that Basile suffered from a conflict of interest that impaired his representation of McNeal in the state court case.

In the 1998 state court case, the prosecution's case against McNeal consisted of the testimony of a Chicago police officer who testified that he saw McNeal and a juvenile, Roceasar Ivy, engage in narcotics transactions on October 7, 1997. The officer testified that after arresting McNeal and Ivy, he recovered a cigarette box from which, he said, he had seen McNeal and Ivy remove objects and give them to apparent purchasers. The box contained numerous packets of a substance that later testing showed to be cocaine. On cross examination, the officer denied "putting the [drugs] on Mr. McNeal" after learning that Ivy was a juvenile.

Following the conclusion of the prosecution's case, Basile asked for a continuance so that he could bring Ivy in to testify. At a later date, Basile indicated that he might also call another witness, Tonzel Means. Still later, the prosecutor reported that he believed Basile represented Roceasar Ivy on other matters and that as a result Basile might have a conflict of interest. The trial judge indicated that he would address the issue the following day. The record regarding the next day's proceedings, however, reflects no discussion of the conflict. Basile did not call Ivy or Means to testify on McNeal's behalf. Rather, Basile presented McNeal's testimony and then rested the defense case. In his testimony, McNeal denied participating in any narcotics transactions and said that he had been standing with several other males, including Means and

3

Ivy, when the police arrived. Several of the youths ran, and some were taken into custody. When the police learned Ivy was a juvenile, McNeal said, an officer told him that he (McNeal) would be "going straight down" for the drugs.

At the conclusion of the bench trial, the judge found McNeal guilty of possession of a controlled substance with intent to deliver. He was sentenced to a period of four years incarceration. McNeal was found eligible for placement at a "boot camp" facility, evidently completed that facility's program successfully, and as a result was released from incarceration after serving slightly more than six months.

McNeal's counsel in the present case has presented an affidavit from Tonzel Means. Means says that on the date of the alleged offense, he was with McNeal at all times, and McNeal did not participate in any narcotics transactions and did not exchange money or objects with anyone. Means says that McNeal asked him to testify in the case, and that as a result he (Means) spoke with McNeal's lawyer and told him what had happened. The lawyer was aware that Means was present at court on the day of McNeal's trial. Means was prepared to testify, but Basile never called him to testify.

As indicated earlier, McNeal objects to the use of the 1998 conviction to enhance his sentence, arguing that the conviction was obtained in violation of his Sixth Amendment rights to effective assistance of counsel and to representation by counsel free from conflicts of interest. The government contends that McNeal is barred from challenging the 1998 conviction. It relies on § 851(e), which provides that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21

4

U.S.C. § 851(e).

As indicated earlier, McNeal was convicted in the state court case on August 19, 1998. He was first charged in the present case on March 27, 2003, about four years and seven months after the 1998 conviction. The government first advised McNeal on April 17, 2003 that it intended to file a § 851 information. The disclosure came in a letter in which the prosecutor transmitted to defense counsel copies of certain discovery materials. The prosecutor stated in the letter that "September 12 is the deadline for entering into plea agreements with this office" (at the time, the case was set for trial on October 14, 2003). The prosecutor went on to state that "[f]urther, on May 1, I intend to file section 851 notices concerning any defendant with applicable prior convictions." Gov't Resp. to Def.'s Dec. 22, 2005 Filing, Ex. A. The trial was thereafter postponed on more than one occasion, however, and the prosecutor states that for that reason, he deferred filing the § 851 information. Gov't Resp. to Def.'s Dec. 22, 2005 Filing at 6.

On July 8, 2004, the day after co-defendant Rokesha Johnson pled guilty, the prosecutor wrote to defense counsel for McNeal and co-defendant Keith Collins to advise them of Johnson's guilty plea. At that point, the case was set for trial on September 7, 2004. The prosecutor's letter included the following admonition: "as to Mr. McNeal, I intend to file a Section 851 enhancement against him by August 2, 2004, if he has not yet pled guilty." Gov't Resp. to Def.'s Dec. 22, 2005 Filing, Ex. B. The prosecutor advises that after the trial date was again reset, this time to April 11, 2005,[1] he reserved filing the § 851 information until November

---

[1] The trial date was reset to April 2005 in September 2004, following the return of a superseding indictment that included sentencing-related allegations, during the period after the decision in *Blakely v. Washington,* 542 U.S. 961 (2004), and before *United States v. Booker,* 543 U.S. 220 (2005), when the effect of *Blakely* on the federal Sentencing Guidelines was still uncertain.

5

2004, "when it became clear that the defendant would not plead guilty." Govt. Resp. to Def.'s Dec. 22, 2005 Filing at 6.

The government has also explained the reason for its delay in filing the § 851 information:

> the government's filing of a Section 851 enhancement occurred only after it became clear that defendant did not intend to plead guilty and cooperate with the investigation. The government, as it often does in cases involving potential Section 851 enhancements, was using the threat of an enhancement to entice defendant to follow through with his earlier desire to cooperate in this and other investigations.

Govt's Resp. to Def.'s Dec. 22, 2005 Filing at 6. The effect of the "threat" of the enhancement was to give McNeal the opportunity to elect to plead guilty without the additional sentencing burden that a § 851 enhancement would impose. Thus the delay effectively provided McNeal with a potential benefit, albeit one that he elected not to accept, as was his right.

The delay, however, also eliminated McNeal's ability to launch a collateral attack under § 851(c)(2). Had the government filed the § 851 information at any time within about five months of when it first raised the possibility of seeking an enhancement, the statute would have entitled McNeal to attack the 1998 conviction. But by the time the government actually filed the § 851 notice in November 2004, over eighteen months after it first raised the possibility, the time for a challenge under § 851(c)(2) had run.

## Discussion

McNeal contends the government delayed unduly in filing the § 851 information. He asks the Court, as a matter of statutory construction, to toll § 851(e)'s five year limitation on collateral challenges to a prior conviction. Alternatively, McNeal asks the Court to dismiss the § 851 information, arguing that this is required by principles of due process.

6

It is clear that § 851(e) does not allow for tolling or extension of the five year limit on challenges to prior convictions in the manner sought by McNeal. McNeal argues that once the government learns of a prior conviction that qualifies under § 851, any subsequent return of an indictment or information should toll § 851(e)'s limitation period. Under McNeal's proposed rule, because the government learned of McNeal's 1988 conviction by April 17, 2003, the superseding indictment that was returned three months later would toll the limitation period and permit McNeal to challenge the prior conviction. The plain language of § 851(e) makes it clear, however, that it is the § 851 information, not any indictment returned in the case, that tolls the limitation period under § 851(e). *See United States v. Arango-Montoya,* 61 F.3d 1331, 1338 n.1 (7th Cir. 1995); *United States v. Cevallos,* 574 F.2d 854, 855 (5th Cir. 1978).

We therefore turn to McNeal's contention that the government's delay in filing the § 851 information violated McNeal's rights under the Fifth Amendment's Due Process Clause. The Seventh Circuit has held that the government may file a § 851 information as late as the eve of trial, *see, e.g., United States v. Ceballos,* 302 F.3d 679, 692-93 (7th Cir. 2002), but neither the Seventh Circuit nor any other circuit has directly addressed the issue presented by McNeal. That issue, as the Court understands it, is as follows: when the government becomes aware of a qualifying prior conviction of the defendant that, at that point, is less than five years old, but delays filing a § 851 information until after the prior conviction is more than five years old and is thus beyond statutory challenge, does the Due Process Clause entitle a defendant to some form of relief?

In addressing this issue, the Court assumes, for purposes of discussion, that McNeal has in fact been prejudiced by his inability to raise a challenge under § 851(c)(2) to the use of the

7

1998 conviction for enhancement purposes. The mere loss of the *opportunity* to make such a challenge is not, in our estimation, cognizable prejudice for due process purposes; rather, such prejudice exists only where the defendant could have mounted a *successful* attack on the prior conviction. *Cf. United States v. Valenzuela-Bernal,* 458 U.S. 858, 873 (1982) (concerning government's deportation of potential defense witness; due process violated only if defendant can make some showing that show the witness's testimony likely would have been favorable and material). At this point the Court cannot say that McNeal would succeed in his attack on the 1998 conviction; to make such a determination, as the government points out, further proceedings would be required. But for present purposes, we will assume that McNeal would be able to make the necessary showing.

We begin our discussion by noting that the Supreme Court has held that the Constitution does not entitle a convicted defendant to collaterally attack a prior conviction used to enhance his sentence. *See Custis v. United States,* 511 U.S. 485, 496-97 (1994). In *Custis,* the Court noted that it had previously permitted collateral challenges to convictions obtained in violation of the Sixth Amendment's right to counsel – that is, where no counsel was appointed for an indigent defendant. *Id.* at 494 (citing *Johnson v. Zerbst,* 304 U.S. 458 (1938)). The Court declined, however, to extend this rule to prior convictions subject to other constitutional infirmities, stating that its prior decisions indicated that "failure to appoint counsel for an indigent defendant [is] a unique constitutional defect." *Id.* at 496. The Court went on to state that the distinction was supported by the need for "[e]ase of administration": "determination of claims of ineffective assistance of counsel ... would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may

date from another era, and may come from any one of the 50 States." *Id.* In addition, the Court stated, "[t]he interest in promoting the finality of judgments" provided additional support for its decision. A challenge to a prior conviction, the Court said, amounts to a request to deprive a state court judgment of its normal force and effect, in a proceeding with an independent purpose other than to overturn the prior judgment; such "'[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." *Id.* at 497 (quoting *United States v. Addonizio,* 442 U.S. 178, 184 n.11 (1979)).

In short, there is no constitutional right to collaterally challenge a prior conviction used to enhance a sentence. Such a right exists only to the extent it is accorded by statute.

The question in this case, however, is not whether the Constitution requires allowing a collateral attack on a prior conviction used for sentencing enhancement; Congress specifically permitted such attacks in § 851(e). Rather, the issue is whether the government may delay its filing of a § 851 information in a way that prevents the defendant from exercising his statutory right to make a collateral attack.

This is a difficult issue that does not find any clear answer in precedent. As discussed earlier, the parties have not cited, and the Court has not found, any prior decisions addressing the issue. There is, however, an arguable analogy in cases dealing with conduct by the government that has the effect of depriving the defendant of the ability to defend a criminal charge. The analogy is not perfect; a § 851 enhancement is not a criminal charge. But because a § 851 enhancement has the effect of increasing the minimum and maximum penalties for the crime, and because § 851 itself permits a defense to the enhancement (within the time limit noted), the

9

comparison is not an unfair one.

"[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings." *Doggett v. United States,* 505 U.S. 647, 666 (1992). The Supreme Court's decisions reflect that due process is implicated when the government deprives an accused of the ability to defend against a criminal charge. For example, the government may not suppress evidence favorable to the accused, and it has an affirmative duty to disclose exculpatory evidence even without a request, irrespective of its good faith. *See, e.g., Kyles v. Whitley,* 514 U.S. 419 (1995); *United States v. Agurs,* 427 U.S. 97 (1976); *Brady v. Maryland,* 373 U.S. 83 (1963). Under some circumstances, the government is required to disclose the identity of an undercover informant who has evidence important to the defense of a charge, so that the defendant can call the informant to testify. *See Roviaro v. United States,* 353 U.S. 53 (1957). Due process may be violated when the government deports a witness who would have given material testimony favorable to the defense, *see Valenzuela-Bernal,* 458 U.S. at 873, and when the government, in bad faith, fails to preserve evidence potentially useful to the accused. *Arizona v. Youngblood,* 488 U.S. 51 (1988). Due process is also implicated when the government delays prosecution for so long that it impairs the defendant's ability to mount a defense. *See United States v. Lovasco,* 431 U.S. 783, 790 (1977); *United States v. Marion,* 404 U.S. 307, 325 (1971).

In the present case, McNeal relies on constitutional doctrine regarding undue preindictment delay. In *Lovasco,* the Supreme Court determined that while statutes of limitation are "the primary guarantee against bringing overly stale criminal charges," the constitutional guarantee of due process "has a limited role the play in protecting against oppressive delay."

10

*Lovasco,* 431 U.S. at 789. Specifically, the Court ruled, the Due Process Clause prohibits prosecution of a defendant following the government's undue delay in returning charges, if the actual prejudice to the accused outweighs the government's justification for the delay. *Id.* Courts have indicated that investigative delay is ordinarily justified, but that tactical, reckless, or bad faith preindictment delay that unduly prejudices a defendant is constitutionally dubious. *See id.* at 795-97 & n.17; *see also, e.g., United States v. Sowa,* 34 F.3d 447, 450-52 (7th Cir. 1994). In *Sowa,* the Seventh Circuit determined that once a defendant has demonstrated actual and substantial prejudice to his defense resulting from the government's delay, the government must provide its reasons for the delay, and the reasons "are then balanced against the defendant's prejudice to determine whether the defendant has been denied due process." *Id.* at 451.

McNeal contends that the government had no good reason for its delay in filing the § 851 information in this case, and that he has been irreparably prejudiced due to his inability to make a timely collateral attack on the 1998 conviction. Though the analogy between preindictment delay cases and McNeal's situation has some appeal, the Court is not persuaded that the Due Process Clause provides McNeal with an avenue for relief. In the preindictment delay cases, the basis for relief is that the defendant has been deprived of the ability to mount a defense to the government's charge because of the government's undue delay. By contrast, McNeal had ample opportunity to challenge the 1998 conviction after he was sentenced by the state court judge in that case, by way of appeal and by post-conviction petition. The 1988 conviction imposes an infirmity on McNeal not because of anything the government did or failed to do, but because he chose not to challenge the conviction by the means the law provided to him.

McNeal might have a better claim for relief if there was some reason to believe that the

11

government was cognizant of the fact that its delay might deprive McNeal of the ability to make a successful collateral challenge to the 1988 conviction. In cases in which preindictment delay has resulted in actual dismissal of an indictment, there typically is a showing that the government was at least conscious of the adverse effect of its delay in the particular case. *See, e.g., United States v. Sabath,* 990 F. Supp. 1007, 1019 (N.D. Ill. 1998) (Castillo, J.). The Court sees no evidence of anything of the kind in this case. To be sure, government counsel can reasonably be deemed to have been on notice, even if he was not consciously aware, of the five year limitation on collaterally challenging prior convictions asserted under § 851. But that is a far cry from awareness of any potential infirmity with McNeal's prior conviction.[2] Indeed, under ordinary circumstances one would not expect the government to have any information about potential infirmities in prior convictions. Such things ordinarily do not show up from examination of a defendant's criminal history, or even from examination of the judgment of conviction in a prior case. *Cf. Custis.*

Even though McNeal may reasonably claim to have been prejudiced by the government's delay in this case, the potential prejudice is outweighed by the countervailing considerations we have discussed. Specifically, McNeal had, but bypassed, the opportunity to challenge the 1988 conviction both directly (by appeal) and indirectly (by post-conviction motion and federal habeas corpus petition). In addition, there is no indication that in delaying filing of the § 851 information, the government was conscious that McNeal might suffer actual prejudice; to the contrary, the government's delay provided McNeal with a potential benefit if he chose to plead

---

[2] We also note that there was a second potentially-useable conviction, another narcotics charge to which McNeal pled guilty at or around the same time he was convicted by the judge in the case at issue.

guilty. For these reasons, the Court rejects McNeal's contention that the government should be precluded from using the 1998 conviction to seek an enhancement of McNeal's sentence.

## Conclusion

For the reasons stated above, the Court overrules defendant Gregory McNeal's objection to the government's § 851 notice. Sentencing is set for May 10, 2006 at 1:30 p.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 20, 2006